IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 1469 LLC, on behalf of itself and other persons similarly situated | ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) |
| COPART, INC. d/b/a CASH FOR CARS | ) ) ) |
| *Defendant*. | ) ) |

CIVIL ACTION NO.

JUDGE

MAG. JUDGE

---

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

---

Plaintiff 1469 LLC brings this Class Action Complaint and Demand for Jury Trial against Defendant Copart, Inc. d/b/a Cash for Cars ("Cash for Cars") to stop its practice of making unwanted and unsolicited text junk faxes to the fax numbers of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**Nature of the Action**

1. More than two decades ago, the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (hereinafter referred to as "TCPA") was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without prior express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005 (hereinafter referred to as "JFPA"). As amended,

the law requires senders to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future junk faxes and explains how to exercise that right.

2. Plaintiff brings this class action to recover damages for and to enjoin massive junk faxing by defendant, Copart, Inc. d/b/a Cash for Cars ("Cash for Cars") (hereinafter referred to as "Defendant") in direct violation of the TCPA. Upon information and belief, Plaintiff avers that Defendant has blasted thousands of junk faxes nationwide in direct violation of the TCPA and the regulations promulgated under the act by the Federal Communications Commission (hereinafter referred to as "FCC"). Defendant's violations include, but are not limited to, the facsimile transmission of advertisements to Plaintiff's facsimile telephone number, including, but not limited to, on August 16, 2016.

## Standing and Jurisdiction

3. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District.

## The Parties

5. *Individual Plaintiff/Class Representative.* Plaintiff is, and at all times relevant hereto was, a limited liability company duly organized and existing under the laws of the State of Louisiana, with its principal place of business in New Orleans, Louisiana.

6. *Defendant:* Upon information and belief, Defendant is, and at all times relevant hereto was, a corporation organized and existing under the laws of the state of Texas, having its principal place of business in Dallas, Texas.

### The JFPA's Prohibition Against Junk Faxing

7. By the early 1990s, advertisers began exploiting facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk faxes tie-up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate fax communications from junk advertisements. Congress responded to the problem by passing the TCPA. The TCPA made it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §227(b)(1)(C). The antijunk fax law was enacted to eradicate "the explosive growth in unsolicited facsimile advertising, or junk fax." H.R. Rep. No. 102-317 (1991).

8. In the decade following the law's enactment, however, American consumers and businesses continued to be besieged by junk faxes because senders refused to honor requests by recipients to stop. Congress responded by strengthening the law through the JFPA of 2005. The JFPA continues the prohibition against sending unsolicited advertisements via facsimile transmission and implemented the additional requirement that all facsimile advertisements include specific opt-out notices. The FCC has defined a "sender" to include any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(a)(3), (f)(8). Furthermore, the TCPA defines an "advertisement" as "any material advertising the commercial

3

availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

9. The JFPA requires senders to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements").

10. Advertisers must place the notice clearly and conspicuously on the first page of the fax transmission and include prescribed information that Congress believed essential to enable junk fax recipients to opt-out of future faxes.

11. Compliance with the Opt-Out Notice Requirements is neither difficult nor costly; and these requirements provide important consumer protections bestowed by Congress upon American consumers and businesses. These protections include giving the consumers and businesses the right to stop unwanted junk faxes, requiring the senders to disclose the right and explain how to exercise that right, and providing statutory damages for violations.

12. Further, the TCPA requires that even facsimile advertisements being sent to consumers who consented to receipt, or with whom the advertiser has an established business relationship, must include language on the facsimile which fully complies with the Opt-Out Notice Requirements.

### Defendant's Junk Fax Campaign

13. Defendant is a used car wholesaler who claims to be serving the car industry for 30 years.

14. To advertise their goods and/or services, Defendant blasts thousands of junk faxes to businesses across the nation. Defendant blasts junk faxes without complying with the Opt-Out

Notice Requirements, in direct violation of the TCPA, JFPA and the FCC's regulations promulgated thereunder.

15.  The junk faxes sent to Plaintiff were part of Defendant's junk fax marketing campaign.

16.  Defendant's faxes failed to comply with the Opt-Out Notice Requirements. By failing to include a compliant opt-out notice, Defendant is precluded from raising an established business relationship defense in any litigation arising from that fax advertisement. Defendant is also precluded from raising the defense that Plaintiff solicited any such faxes or gave express prior permission.

17.  As a result of Defendant's faxes, Defendant has imposed tremendous disruption, annoyance, and cost on Plaintiff. Among other things, these faxes tie-up Plaintiff's telephone lines and facsimile machines, misappropriate and convert Plaintiff's fax paper and toner, and require Plaintiff to sort through faxes to separate legitimate fax communications from junk fax advertisements.

18.  Failing to provide a compliant opt-out notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the regulations promulgated by the FCC. The TCPA provides for a private right of action based on violations of its regulations.

## Class Action Allegations

19.  *Statutory Reference.* This action is properly maintainable as a class action under authority of Federal Rule Civil Procedure 23 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the

representative parties will fairly and adequately protect the interest of the class; and (d) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

20. *Class Definition.* The Plaintiff Class consists of all persons and entities that are subscribers of telephone numbers to which Defendants sent commercial telefacsimile transmissions within the last four years where those transmissions did not contain the opt-out language required by the TCPA and JFPA.

21. *Class Size.* Upon information and belief, Plaintiff avers that the Class numbers are in the thousands of persons or entities.

22. *Adequacy of Representation.* The Class will be well represented by the class representative and class counsel. Plaintiff appreciates the responsibility of a class representative and understands the nature and significance of the claims made in this case. Plaintiff can fairly and adequately represent and protect the interests of the Class because there is no conflict between its interests and the interests of other class members. Proposed class counsel has the necessary resources, experience and ability to prosecute this case on a class action basis.

23. *Impracticability of Joinder.* Joinder of all Class members is impracticable due to the class' size and due to the relatively small potential monetary recovery for each Class member, in comparison to the time and costs associated with joinder in the litigation on and individual basis.

24. *Common Questions of Law and Fact are Predominant.* Questions of law and fact common to the class predominate over questions affecting only individual class members. Numerous questions may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right of recover following the class judgment.

25.     *Common Questions of Fact.* This case presents numerous questions of fact that are common to all class members' claims. Defendant has engaged in a standardized course of conduct *vis-a-vis* class members, and Plaintiff's injuries arise out of that conduct. All Defendant's junk faxes were prepared, developed, and sent by Defendant in the same manner for all recipients. Defendant's junk faxes are the product of an organized fax-blasting campaign targeted to the class.

26.     *Common Questions of Law.* The case presents numerous common questions of law, including, but not limited to:

- Whether Defendant's junk faxes were "commercial";
- Whether Defendant's Opt-Out Notice complied with federal law;
- Whether Defendant's junk faxes constituted a willful violation of the TCPA;
- Whether injunctive relief is warranted to enjoin Defendant from further violations of the TCPA and JFPA; and
- Whether Defendant's junk faxes were in violation of Louisiana's Junk Fax law.

27.     *Appropriate Method/or Fair and Efficient Resolution of the Controversy.* A class action is an appropriate method for the fair and efficient adjudication of the controversy for several reasons:

- Prosecuting separate actions by individual class members would create a risk inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant;
- Because Defendant has acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole;

- Questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy;

- Absent class certification, there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Most members of the Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action.

- Because the statutory minimum damage is $500 per violation and the TCPA and JFPA does not authorize an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendant's violations of the TCPA would be grossly uneconomical. As a practical matter, the claims of the vast majority of the Class are not likely to be redressed absent class certification.

- Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

28. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

29. Defendant violated the TCPA, JFPA and the FCC's regulations because it failed to comply with the mandatory Opt-Out Notice Requirements under federal law.

30. Defendant is a sender of the junk faxes alleged in this Complaint because (1) it is the person or entity on whose behalf the facsimile advertisements were sent, and (2) its property, goods and services are advertised or promoted in the junk fax.

## SECOND CAUSE OF ACTION
### Violation of Louisiana R.S. 51:1745, *et seq.*
### (On behalf of Plaintiff and the Louisiana Subclass)

31. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

32. Louisiana's law states that "No person shall initiate the unsolicited transmission of a telefacsimile message promoting goods or services for purchase by the recipient of such message." *See* La. R.S. 51:1746(A).

33. Defendant is a business entity or association and, as such, is a "person."

34. Defendant sent Plaintiff and members of the Louisiana Subclass unsolicited telefacsimile messages advertising its goods and services.

35. The Louisiana Subclass consists of all persons and entities that are subscribers of telephone numbers to which Defendants sent commercial telefacsimile transmissions within the last ten years where those transmissions were unsolicited pursuant to Louisiana R.S. 51:1745, *et seq*.

### Prayer for Relief

**WHEREFORE**, Plaintiff and the Class pray for judgment against Defendant:

(1) Certifying a class consisting of all persons and entities that are subscribers of telephone numbers to which Defendants sent commercial telefacsimile transmissions within the last four years where those transmissions did not contain the opt-out language required by the TCPA and JFPA.

(2)     Certifying a Subclass consisting of all persons and entities that are subscribers of telephone numbers to which Defendants sent commercial telefacsimile transmissions within the last ten years where those transmissions were unsolicited pursuant to Louisiana R.S. 51:1745, *et seq*.

(3)     Appointing Plaintiff as representative for the Class and awarding Plaintiff an incentive award for its efforts as class representative;

(4)     Appointing Plaintiff's counsel as Class counsel;

(5)     An award of actual, statutory, and treble damages to the named Plaintiff and also the Plaintiff Class;

(6)     For injunctive relief in accordance with subsection (b)(3)(A) of the TCPA and JFPA;

(7)     Ordering payment of costs of litigation, including without limitation costs of suit and attorneys' fees, spread among the members of the Class in relation to the benefits received by the Class;

(8)     For pre-judgment interest;

(9)     For costs of suit herein from Defendant;

(10)    For such other and further relief as the Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted:

*/s/ Emily A. Westermeier*
_____

Roberto Luis Costales (33696)
William H. Beaumont (33005)
Emily A. Westermeier (36294)
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
Facsimile: (504) 272-2956
Attorneys for Plaintiff